[Civ. No. 7104. Second Appellate District, Division One.—March 8, 1932.]

C. S. BRANDOW, Appellant, v. E. O. HOLLEY, Respondent.

Victor L. Bentson for Appellant.

John De Ferie for Respondent.

HOUSER, J.—As far as are pertinent to the conclusion reached herein, the facts appear to be that by the terms of an executed written instrument plaintiff leased to defendant and defendant hired from plaintiff for a term of years a portion of a building owned by plaintiff "for the purpose of conducting and carrying on the business of dealing in new and used cars and service same". At the time the lease was executed, the building in which the leased premises were situated was under construction and not then ready for occupancy. The execution of the lease was the result of negotiations between the interested parties which were initiated by a written proposal made by defendant to plaintiff, which, among other provisions, contained the following:

" . . . Plans of said building to be O.K. by said lessee."

With reference to whether the "plans of said building" were "O.K.'d" by the lessee, the following excerpt from the testimony given by defendant on the trial of the action will illustrate the position of defendant at the time when the lease was executed, to wit: "Q. I am asking you if when you signed the lease that was not your way of accepting the proposal that you had made? A. It was my way of accepting the proposal when it was accepted by Mr. Brandow, yes, sir."

It appears that the front portion of the leased premises was intended to be used by the lessee as a showroom for the sale of automobiles, and that the rear portion of said premises (which was divided from the front portion by a fire-wall) was to be used as a garage. After its completion, the building in which the leased storeroom was situated consisted of two stories; and the second story thereof in part was occupied by persons as apartments for living quarters. On trial of the action a city ordinance was introduced in evidence, from which it appeared that within the city of Los Angeles where the premises in question were located, in substance, it was unlawful to conduct an establishment such as was contemplated by defendant "in any part of any building that is used or occupied as a hotel, apartment, rooming house, lodging house, or flat building".

After the execution of the lease and after defendant had taken possession of the leased premises, a qualified permit

to conduct business as specified in said lease was granted to defendant by the regularly constituted authorities of the city of Los Angeles; that is to say, the right of defendant to have gasoline or a battery or batteries in any automobile was limited to the garage or rear portion of the leased premises; but such right was denied defendant as to any automobiles kept or stored in the front portion of said premises, known as the showroom, or the place where automobiles were offered for sale. In such circumstances, within a few weeks after defendant took possession of the leased premises he served upon plaintiff a so-called rescission of the contract of lease, and within a short time thereafter vacated the leased premises. Some months thereafter plaintiff released the premises to a third person;—following which the instant action was commenced for the purpose of recovering judgment from defendant for rental which accrued during the period which intervened between the date when defendant took possession of the premises and the date of entry of same by the new tenant, less the sum of $100 which theretofore had been received by plaintiff from defendant on account of rental. Following the trial of the action, findings of fact were signed by the trial court and judgment rendered in favor of plaintiff; but as the result of a motion made by defendant for a new trial, new findings of fact, which in many important respects were either inconsistent with the former findings of fact, or contrary thereto, were signed by the trial judge, and in pursuance thereof a new judgment was rendered in favor of defendant. It is from the latter judgment that the instant appeal is taken.

Among other facts appearing in the new findings of fact made by the trial court is the statement ''that the said building was so constructed that it was not reasonably fit and suitable for the carrying on of the business for which it was leased, without violating the ordinances of the city of Los Angeles'';—referring particularly to the fact that because a part of the building in which the leased premises were located was used by third persons as an apartment for living quarters, no unqualified permit to conduct in the front part of said leased premises the business contemplated by defendant would be issued by the regularly constituted authorities of the said city. The principal question pre-

sented by this appeal is whether in the situation as outlined by the facts herein set forth, particularly with reference to the finding of fact to which attention has been directed, defendant may be legally excused from the payment of rent in accordance with the terms of the lease during the time that he was in possession of the premises and thereafter until plaintiff leased the property to a third person.

On behalf of respondent it is urged that in letting the premises to defendant plaintiff. warranted them to be reasonably fit and suitable for the purposes specified in the lease, to wit: "conducting and carrying on the business of dealing in new and used cars and service same". In addition thereto, respondent contends that by the provisions of the lease the use of the premises was so restricted that on the breach of the assumed warranty that the leased premises were reasonably fit and suitable for the purposes for which they were let, the lessee was relieved from any and all obligation expressed in the lease to pay rent to the lessor for the leased premises.

On the part of appellant, the existence of any such warranty is denied, especially in view of the fact that (as shown by the evidence), preceding the execution of the lease, not only constructively, but also actually, defendant was thoroughly familiar with the entire situation regarding the design, construction and intended use of the building when constructed, but as well with the ordinance of the city of Los Angeles affecting the maintenance of public garages in buildings occupied in any part thereof as living quarters, to which ordinance attention hereinbefore has been directed. Then, too, appellant challenges the sufficiency of the evidence to support the finding of fact by the trial court "that said building was so constructed that it was not reasonably fit and suitable for the carrying on of the business for which it was leased, without violating the ordinances of the city of Los Angeles".

Regarding the evidence upon which such finding of fact is rested, the record herein discloses that the testimony given by defendant was to the effect that, "aside from the mere detail of removing the gas and battery from the car, the showroom was in all particulars all right for the purpose of displaying automobiles". The only objection by defendant to the entire leased premises was confined to the showroom

thereof. The evidence showed that in his attempt to make a sale of an automobile, if defendant should desire to "demonstrate" the same, it became and was necessary first to move the automobile into the garage for the purpose of supplying it with gasoline and batteries, and that such operation ordinarily required from thirty minutes to an hour and fifteen minutes. In the meantime, due somewhat, although not entirely or necessarily, to the temperament of the prospective customer, the sale might be lost because of the inability of defendant to "demonstrate" at once, and thus close the deal at the "psychological moment". It thus becomes apparent that the claimed unfitness of the show-room of the leased premises is simply one of degree. The entire showroom in all respects might have been perfectly suited to the proposed business of defendant. On the other hand, it might have been objectionable or undesirable for any one of numerous reasons, and yet from a legal point of view not have been unfit or unsuitable for the purpose for which it was leased. For example, it might have been poorly lighted; or its front windows unattractively con-structed or arranged; or from a business standpoint the storeroom might have been disadvantageously located either on a side street; or in a sparsely settled community or neighborhood, or it might have fronted on an alley; or it might have occupied the rear portion of some storeroom of which the front portion was devoted to a business wholly foreign to that proposed to be transacted by the defendant in the instant case. It is apparent that the existence of all or either of such situations would seriously interfere with, if not preclude, the conduct of a profitable business. The evidence showed that in the part of the leased premises which was used by defendant as a garage, no restriction was placed upon his permit either as to gasoline or as to batteries in any automobile stored therein. For aught that appears, defendant was privileged to keep therein either his own "demonstrator" automobile, or the like automobile owned or operated by any or all of his salesmen or other employees. Nor was defendant or any salesman employed by him pre-cluded from parking his "demonstrator" automobile either in front of the leased premises or in the immediate vicinity thereof. It thus is obvious that the objection to the show-room of which defendant complains, although not wholly

without merit, nevertheless concerns a defect which should be regarded more in the light of a lack of convenience or advantage which might or might not be afforded, rather than as an insuperable obstacle to the successful transaction of business. It is probable that the inability of defendant to "demonstrate" an automobile on an instant's notice affected merely the volume of business which might be transacted by him, rather than that the inconvenience of the situation resulted in the absolute prevention of his sale of automobiles. It is therefore apparent that, in the circumstances as portrayed by the evidence in the case, the trial judge was not justified in his determination that the "said building was so constructed that it was not reasonably fit and suitable for the carrying on of the business for which it was leased". In addition thereto, remembering defendant's original proposal to plaintiff regarding the lease, and particularly the stipulation therein that "plans of said building to be O.K. by lessee";—and considering defendant's conduct in the matter, together with his thorough familiarity with the entire situation preceding the execution of the lease, and especially his testimony in substance that when he signed the lease "it was my way of accepting the proposal when it was accepted by Mr. Brandow, . . . "—it would be rather difficult to prevent the application of the principle of estoppel.

The judgment is reversed and the unauthorized appeal from the order "changing and vacating the judgment heretofore rendered in favor of plaintiff and granted in lieu of a new trial" is dismissed.

Conrey, P. J., and York, J., concurred.